## Case No. 12,240.

### ST. LOUIS STAMPING CO. v. QUINBY et al.

[4 Ban. & A. 192:[1] 16 O. G. 135.]

Circuit Court, E. D. Missouri.   March, 1879.

PATENTS — ENAMELLED IRON-WARE — SPECIFICA-
TIONS—SCIENTIFIC REASONS—REISSUE.

1. In the original patent, it was stated, generally, that any well-known enamelling mixture, if used in connection with stamped iron-ware in the manner described, would effect the end sought. In the reissue, the patentee described a formula for an enamelling mixture to be so used: *Held*, under the circumstances of the case, not to be new matter.

2. It is not essential that the patentee should be able to state the scientific reasons for the operation of the process, or the production of the result, which he patents. It is sufficient, if his description will enable one skilled in the business to practice the process or accomplish the result.

3. The reissued patent No. 7,779, granted to Frederick G. Niedringhaus and William F. Niedringhaus, July 3d, 1877, for improvement in the manufacture of enamelled iron-ware (the original patent having been dated May 30, 1876, and numbered 177,953), are valid.

[This was a bill in equity by the St. Louis Stamping Company against E. C. Quinby and others for the infringement of reissued letters patent No. 7,779, granted to F. G. & W. F. Niedringhaus July 3, 1877, the original letters patent, No. 177,953, having been granted May 30, 1876.]

S. S. Boyd, for complainant.

Overall & Judson, for defendants.

TREAT, District Judge. There has been submitted, after full hearing and a large amount of evidence, the case of the St. Louis Stamping Company against E. C. Quinby and others. The St. Louis Stamping Company is the assignee of reissued letters patent No. 7,779, granted to Frederick G. and William F. Niedringhaus, July 3d, 1877, for improvement in the manufacture of enamelled iron-ware. There are various defences set up. The first is one always initial where the controversy pertains to a reissue patent, viz.; whether the reissue patent is for other than the invention included in the original patent. As to that objection, the defendants are evidently mistaken. The original patent was for a process and a product. The only change made is the mere introduction into the reissued patent of a formula as to an enamelling mixture which could work out the result, while, in the original it was stated, generally, that any well-known enamelling mixture, if used in connection with stamped ware in the manner described, would effect the end sought.

The claims in the original patent are as follows: "(1) The herein-described process of enamelling iron-ware, by oxidizing the iron during the process of drying the glaze, sub-

---

1 [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

stantially as set forth." That phraseology is not changed in the reissued patent. The second claim is: "(2) A new manufacture of enamel sheet-iron ware, enamelled substantially as described." In the reissue the phraseology is: "(2) As a new manufacture, mottled enamelled sheet-iron ware, having the oxidized base fused with the surface-glaze." Now, in the original patent, it is stated in the specification that, "by reason of this oxidation" (after describing the mode of treating the iron), "the enamel is caused to enter the pores of the iron and become more intimately incorporated with the metal, thus rendering the enamel more durable," which is substantially what is stated in the second claim. Instead of saying "substantially as herein set forth," it is stated specifically, in the claim, what was declared in the original patent—only defining what was therein "substantially as set forth."

There is a large amount of testimony in this case proceeding on what seems to be an erroneous idea. This is a patent for a process and a product; and, as to the process, the gist is that, if the iron is treated in the manner set out, then, by using any enamel-glaze, the end desired—viz.; 'to produce the product—can be effected. It was well known before this patent that iron as well as other ware could be glazed or enamelled. There is nothing new in that. Hence the special merit of this invention, and its utility, depend on the process named in the patent. If stamped iron-ware is passed through the described acid and other baths, as occasion may require, under the directions given, then dipped into the enamel-mixture, and afterward put into a heated oven and muffle in the way stated, the result named will follow. The record shows that this process patent relates to the peculiar mode of treating the iron on which the enamel is to be placed; that by this mode of treatment, with the oxidizing of the metallic base, the desired mottling is produced, whence comes the beauty of the ware, in part, and, very largely, the durability of the glaze. Then all of the testimony, of which there is a large amount, concerning the formula for mixing the glaze, does not bear on the case, if there is any enamelling mixture which will effect the end. There have been produced before the court many specimens of enamelling under the Hickling, Paris, and Brooman patents, which, it is alleged, antedated plaintiff's patent, in order to show that an enamel might be produced under said anticipatory patents, irrespective of the representations or descriptions of this patent. It appears, however, on examining those patents and the products thereof, under the test experiments made, that none of them could effect the desired end without using the essential operations in treating the iron, and, in most instances, actually adopting the idea of the plaintiff in that regard. The experts differ very largely in their speculative ideas as to the philosophy of this patent. The plain-

tiff speaks of the use of the acid baths, and at what particular stage of the operation he oxidizes the metallic base, and of the use of ordinary acids in the enamelling mixture; and, in his reissue patent, he sets forth more, particularly, one formula which will effect the end. Some of the defendants' experts say all glazes will oxidize the metallic base under certain conditions. Plaintiff says, that an artisan operating this patent by following the general directions prescribed, is enabled to regulate the oxidizing of the metallic base to suit the purpose he may have specially in view, or, in other words, to produce ware of a finer or coarser mottle, as may be desired. There have been a great many chemical experiments with regard to this matter. We have on the one side Professors Potter, Riggs and Hedrick, and, on the other, Professor Chauvenet, and they seem to differ very largely, more on the speculative ideas than on the actual facts. We encounter the plain fact, however, which very often occurs with regard to patents, that some person not skilled in chemistry, and not very well learned in mathematics, will invent a process, in one instance, or a mathematical contrivance, in another, without being able to state the chemical or mathematical rules with accuracy, in the light of which learned men would solve the underlying problem, scientifically considered. It is sufficient if his description will enable one skilled in the business to accomplish the desired result. Whether the inventor could stand a successful examination as to the speculative ideas involved, is immaterial. This case has been presented to the court, more with respect to such ideas than to the actual facts.

The process is this, viz.; the treatment of the metallic base by an acid and alkaline bath, as indicated, thus leaving, as asserted, the acid still operating on the metallic base, and, after having so done, subjecting the metallic base, either under a wet or a dry process, to a muffle, previously having the metal dipped into an enamelling mixture where the oxidizing of the metallic base was such that the mixture would inhere. When the operation has thus taken place a mottled enamel would be so fixed into the iron that it could not be chipped or rubbed off. If the facts show that this result could be accomplished through the intermediate treatment under the patentee's description or by other known mixtures for enamelling, nothing occurs to the court to show that this patent is invalid because of the other patents mentioned. The Hickling, Paris, and Brooman patents never contemplated any product of this kind. None of them describe the process or result obtained by the plaintiff's mode. It is said, however, that this patent should be declared void because the patentees concealed what is considered an essential ingredient in their enamel mixture. What has already been stated with regard to that is a sufficient answer. The plaintiffs give in their specifi-

cation an enamelling mixture, not confining themselves to that. They state that the one mentioned is only one formula by which the result may be worked out, adding that, by the use of coloring matter, brown or blue or other colored ware may be produced. Specimens have been presented by experts following the plaintiff's formula and working out the end which the patentee said could be effected. Now, the coloring matter indicated may be alkaline in its qualities or otherwise —larger or less increase of the alkaline or acid matter, as the patentee has specifically indicated in the patent. Hence, there is no solid foundation for the defence as to change of formula. To explain this matter in extenso, by the aid of the specimens produced and those resulting from the test experiments, would require more time than is at command, and it must suffice, for the purposes of this case, to say that the reissued patent is for precisely the same invention as stated in the original patent, and that the alleged anticipatory patents of Hickling, Paris, and Brooman do not disclose the steps nor describe the product set forth in plaintiffs' patent. The statements made by Mr. Crowley, who has been a workman for some gentlemen in Connecticut, must fall, by reason of two essential facts, namely, that his employers, Manning, Bowman & Co., after having the benefit of his skill in England and this country, the moment they heard of this patent, sought the right to use this product for the purpose of mounting ware enamelled under plaintiff's process; secondly, that Mr. Crowley himself, after a great deal of hesitancy, as if he had a great secret to reveal, produced specimens made by the mode alleged to be known to him long prior to this patent, which specimens are very different from the specimens produced under this patent. They are the result of his experiments and of his previous knowledge, and show that, so far as he is concerned, he knew nothing of this process, nor what it would effect.

The conclusion reached, then, is, first, that the patent in the case is a valid subsisting patent; second, that the defendants have infringed it, for there is no doubt, on examination of their patent, reissue No. 7,900, dated October 2d, 1877, and a comparison of the ware, that they are operating the process, and making, selling and using the product covered by plaintiff's patent.

Therefore, a decree will be entered, and a reference to some one, as master, to ascertain the profits and damages. If the counsel agree on the person, the court will name him; otherwise it will name him of its own accord.

[Counsel agree on and reference is made to Mr. Joseph Shippen as master.] [2]

· [For hearing on exceptions to the master's report, see Case No. 12,240a.]

[2] [From 16 O. G. 135.]